UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-00557-KK-RAOx** | Date: | February 13, 2026 |
|---|---|---|---|
| Title: | ***Bhyman Sharma v. Fereti Semaia et al.*** | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING Petitioner's Motion for Temporary Restraining Order [Dkt. 4]**

## I.
## INTRODUCTION

On February 6, 2026, petitioner Bhyman Sharma ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Fereti Semaia, Todd Lyons, Kristi Noem, and Pamela Bondi ("Respondents").  ECF Docket No. ("Dkt.") 2, Petition ("Pet.").  On February 10, 2026, Petitioner filed a Motion for a Temporary Restraining Order ("Motion") seeking his immediate release and an injunction to bar re-detainment without notice and a pre-deprivation hearing.  Dkt. 4, Motion ("Mot.") at 17-18.

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Petitioner's Motion is **GRANTED**.

///

///

///

///

## II.
## BACKGROUND

Petitioner is a native of India who entered the United States on or about June 5, 2024.  Pet. ¶ 2.  Petitioner was detained shortly after his entry and subsequently released on his own recognizance ("ROR") under 8 U.S.C. § 1226(a) ("Section 1226(a)").[1]  Id.  Petitioner did not receive an I-862, Notice to Appear ("NTA") upon this initial release.  Id. ¶¶ 55, 58.

Following his release in 2024, Petitioner applied for asylum.  Id. ¶¶ 58, 63.  Petitioner has no criminal history – he has never been arrested, charged, or convicted of any criminal offense.  Id. ¶ 70.  Additionally, he "has never been determined to be a flight risk or danger to the community."  Id. ¶ 71.  During his release, Petitioner obtained employment that supported himself and his loved ones.  Id. ¶ 7.  Additionally, Petitioner complied with all the terms of his release.  Mot. at 6.[2]

On September 11, 2025, Petitioner was re-detained while standing in front of his house without any notice; an NTA was issued at the same time as the detention.  Pet. ¶¶ 2, 59, 64.  Petitioner remains in custody at Adelanto Detention Facility.  Id. ¶¶ 4, 56.

On January 13, 2026, the Immigration Court ("IC") denied Petitioner's bond request for lack of jurisdiction.  Id. ¶ 67; dkt. 4-1 at 25.

On February 6, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:** Violation of the Fifth Amendment Right to Substantive Due Process;
2. **Ground Two:** Violation of the Fifth Amendment Right to Procedural Due Process; and
3. **Ground Three:** Violation of the Fourth Amendment Protection Against Unlawful Arrest; and
4. **Ground Four:** Violation of the Immigration & Nationality Act.

Pet. ¶¶ 74-95.

On February 10, 2026, Petitioner filed the instant Motion, requesting, on the basis of his procedural due process claim, a temporary restraining order immediately releasing him from Respondents' custody, "[e]njoin[ing] and [r]estrain[ing] Respondents from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decision maker," waiving "the requirement that bond be posted," and ordering "any other relief this Court finds necessary and proper."  Mot. at 17-18.

On February 12, 2026, Respondents filed a Response to the Motion.  Dkt. 7, Response ("Resp.") at 2.  The Response does not address the merits of the Motion, but rather simply argues Petitioner's remedy should be limited to a bond hearing.  Resp. at 2.

---

[1] Section 1226(a) provides a noncitizen may be released on "conditional parole" pending removal proceedings.

[2] Respondents do not dispute Petitioner's compliance with his release terms.  Neither party provides the ROR Order, and Petitioner contends Respondents possess the Order.  Mot. at 5.


This matter, thus, stands submitted.[3]

## III.
## LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

## IV.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

**A.     THE LIKELIHOOD OF SUCCESS ON THE MERITS**

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

**1.     Applicable Law**

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693.

---

[3] On February 12, 2026, Petitioner submitted a Reply. Dkt. 8. Pursuant to this Court's Civil Standing Order, "[u]nless otherwise ordered, reply briefs are not allowed and will be stricken." Civil Standing Order at 9. Accordingly, the Court declines to consider Petitioner's Reply.

As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Mathews, 424 U.S. at 321.

**2.      Analysis**

Here, Petitioner claims Respondents have violated the Due Process Clause by rearresting him "in the absence of materially changed circumstances," thus depriving his "ongoing and protected interest in his liberty." Mot. at 3-5, 8-9; Pet. ¶¶ 79-83. The Court finds Petitioner is likely to succeed on or has at least raised serious questions regarding the merits of his procedural due process claim.

First, Petitioner has a substantial private interest in remaining out of immigration custody given his constitutional right to due process. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) ("Petitioner's interest in not being detained is 'the most elemental of liberty interests.'" (citation modified) (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004))). As noted, Petitioner was released on ROR in 2024 following his initial detention in immigration custody. Pet. ¶ 2. Petitioner's release gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi, 542 U.S. at 529; see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Moreover, the fact Petitioner was previously "held in custody by the government at an earlier time does not eliminate [his] liberty interest in remaining on release." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing Morrissey, 408 U.S. at 482)).

In short, Petitioner's ROR contained an "implicit promise that [his release] will be revoked only if he fails to live up to the [ROR's] conditions." Morrissey, 408 U.S. at 482; see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). During the time of his release shortly after entry on June 5, 2024 through September 11, 2025, Petitioner established himself in community organizations, dkt. 4-1 at 17, and worked to support himself and his family, Pet. ¶ 7. See also Morrissey, 408 U.S. at 482 (noting an individual released on parole acquires a liberty interest in "be[ing] with family and friends and [] form[ing] the other enduring attachments of

normal life"). Additionally, the length of Petitioner's release and compliance with his ROR for over fifteen months further strengthen his private interest in remaining free from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Hence, Petitioner has established a strong interest in his constitutionally-afforded procedural protections.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). In releasing Petitioner on ROR in 2024, ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community. See 8 C.F.R. § 1236.1(c)(8) (authorizing release where the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"); see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (inferring from 8 C.F.R. § 1236.1(c)(8) that ICE determined a petitioner released on recognizance was neither "a danger to the community or a flight risk").

Respondents do not argue to the contrary. Respondents make no argument regarding whether Petitioner may pose a flight risk or a danger. Resp. at 2. Further, Petitioner has no criminal history and was apprehended while simply standing outside his home. Pet. ¶¶ 64, 70. Finally, as noted, Petitioner has integrated himself into his community, where he has obtained gainful employment. Id. ¶ 7. The overwhelming evidence thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, No. CV 25-11206-MCS-PVCx, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025). Therefore, without the procedural safeguard of a pre-detention hearing, ICE may, as it appears to have done so here, revoke Petitioner's release and re-detain his "at any time," regardless of whether his detention serves any valid governmental purpose. Sun v. Santacruz, No. EDCV 25-02198-JLS-JCx, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (finding "post-detention safeguards are definitionally inappropriate to address the harm complained of here"); see also Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Hence, Petitioner has shown there is a high risk he has been erroneously deprived of his liberty.

Third, Respondents have no countervailing interest in re-detaining Petitioner, and the burden of a pre-detention hearing is low. Respondents have not shown Petitioner poses a flight risk or danger to the community, especially considering his lack of criminal history and other countervailing evidence in the record before the Court. To the contrary, Respondents provide no reason for re-detaining Petitioner. Thus, Respondents lack any governmental interest in continuing to detain Petitioner. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). Further, while Respondents would have expended resources in providing Petitioner notice and a hearing, "those costs are far outweighed by the risk of erroneous deprivation of the

liberty interest at issue." E.A. T.-B., 795 F. Supp. 3d at 1324. This is especially so where, as here, Petitioner has complied with his terms of release. See Mot. at 6. Hence, Respondents lack any governmental interest in continuing to detain Petitioner. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk).

In sum, Petitioner has raised a serious question as to whether he has been deprived of procedural due process. Accordingly, the first Winter factor weighs in favor of Petitioner.

**B.    THE LIKELIHOOD OF IRREPARABLE HARM**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Indeed, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." Cortez v. Sessions, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation modified).

Here, as stated above, Respondents have deprived Petitioner of due process by detaining him without notice or a pre-detention hearing. Mot. at 9-10. Hence, there can be no doubt Petitioner is – and will continue to be – irreparably harmed absent relief from this Court. See, e.g., Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) (finding irreparable harm where the petitioner would be "detained and [] not [] entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, No. 1:25-CV-01380-KES-HBK (HC), 2025 WL 3013377, at *8 (E.D. Cal. Oct. 27, 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause").

Accordingly, the second Winter factor weighs in favor of Petitioner.

**C.    BALANCE OF EQUITIES AND PUBLIC INTEREST**

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on his procedural due process claim, the balance of equities and public interest "tip[] sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. In addition, Respondents' interest in enforcing immigration laws is not persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-586 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful

agency action.'") (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016)).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

\* \* \*

Thus, because all four Winter factors weigh in his favor, Petitioner is entitled to a temporary restraining order. See J.A.E.M., 2025 WL 3013377, at \*8 ("Petitioner's immediate release is required to return him to the status quo ante—'the last uncontested status which preceded the pending controversy.'" (quoting Pinchi v. Noem, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at \*3 (N.D. Cal. July 4, 2025))).

Finally, as the Government appears to concede, Petitioner's current re-detention is governed by Section 1226(a) rather than 8 U.S.C. § 1225(b); therefore, he is entitled to a bond hearing at minimum. See Mot. at 13; Resp. at 2. However, Respondents fail to address the fact Petitioner should not have been re-detained without due process in the first place. The Court thus finds Petitioner's release is the appropriate form of relief because his re-detention without due process has violated his constitutional rights. See, e.g., Pablo Sequen v. Albarran, No. 25-cv-06487-PCP, 2025 WL 2935630, at (N.D. Cal. Oct. 25, 2025) (enjoining petitioners' re-detention without a pre-deprivation hearing where a post-arrest bond hearing "would only be provided after they have been detained and thereby deprived of their liberty . . . without first providing an opportunity for them to demonstrate why their detention is unwarranted").

# V.
# CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Motion for Temporary Restraining Order is **GRANTED**;[4]
2. Respondents are **ORDERED** to immediately release Petitioner from their custody;
3. Respondents are **ENJOINED** from re-detaining Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;

---

[4] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.

4. Respondents are **ORDERED** to file a status report no later than February 16, 2026, regarding their compliance with this Order; and
5. Respondents are **ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this Order** why the Court should not issue a preliminary injunction.  Petitioner may file a Reply **no later than ten (10) days from the date of this Order**.

Failure to comply with this Order will result in sanctions.

**IT IS SO ORDERED**.